[Civ. No. 6382. Third Appellate District.—June 13, 1940.]

ALFRED MILAN FOSTER, an Incompetent Person, etc., Appellant, v. ELLEN C. WARREN et al., Respondents.

Wm. J. O'Brien, John F. Poole and H. E. Gleason for Appellant.

Leo M. Zinner and Joseph W. Pierce for Respondents.

THOMPSON, J.—The plaintiff has appealed from that portion of a judgment which was rendered against him determining that a promissory note secured by a second mortgage on real property is not invalid on the ground of fraud.

This is a suit to cancel a note secured by mortgage on certain lots in Los Angeles known as the "Magnolia property" and a quitclaim deed to 86 acres of land called the "Newhall Ranch", on the ground that the instruments were procured by fraud.

On October 18, 1927, the defendant, Ellen C. Warren, and her husband, Charles, owned the Magnolia property in Los Angeles and resided thereon. They also owned a farm called the Newhall ranch. They had three grown children consisting of the defendant Sarah L. Murray, and the other defendants, Charles A. and John F. Warren. On the last-mentioned date Ellen C. Warren and her husband executed and delivered their promissory note for the sum of $3,000, payable to the plaintiff, secured by a mortgage on the Magnolia property. The mortgage was duly recorded. At various times prior to 1936, the two sons, Charles and John Warren, loaned their parents sums of money aggregating an amount in excess of $5,725, which was used for their maintenance and for improvements and operation of the Magnolia property and the Newhall ranch. The parents frequently told their sons they would execute a note and mortgage on the Magnolia property to secure the debt. The record leaves no reasonable doubt of the existence of that indebtedness. The husband of Mrs. Warren died August 13, 1932. The widow thereupon became the sole owner of the real property in question. At that time she possessed no other property except her household goods and several hundred dollars in cash. She was over eighty years of age at the time of the trial of this case. The Magnolia property was appraised in 1936 at a value of $4,100. The Newhall ranch, consisting of 86 acres of land, was valued at approximately $20,000.

In January, 1936, the plaintiff brought suit for foreclosure of his $3,000 mortgage against Ellen C. Warren for default in the payment of the note secured thereby. No *lis pendens* was recorded pursuant to section 409 of the Code of Civil Procedure. February 17, 1936, judgment was rendered in that suit against Ellen C. Warren for the sum of $3,517.46 and for foreclosure of the mortgage and sale of the Magnolia

property to satisfy the judgment. Subsequently the property was sold at sheriff's sale to this plaintiff for the sum of $1500, and a deficiency judgment was entered in favor of the plaintiff for the amount of the unpaid balance. Execution was thereafter issued and returned unsatisfied.

January 18, 1936, while the foreclosure proceeding was pending but before judgment therein was rendered, in consideration of her antecedent debt, and pursuant to her previous agreement, Ellen C. Warren executed and delivered to her sons, Charles A. and John F. Warren, her promissory note, payable to them in the sum of $5,725, secured by mortgage on the premises in question. That mortgage was recorded January 30th of the same year. For about one year prior to 1936, Mrs. Warren had been living with her daughter, Sarah L. Murray. On January 21, 1936, in consideration of an agreement for maintenance and care during her lifetime, Mrs. Warren executed and delivered to her daughter a quitclaim deed to her Newhall property, which was recorded January 30th of that same year. Mrs. Warren testified in that regard: "I deeded her this ranch for my keep, as long as she gave me a home, as long as I lived." The conveyance of the Newhall ranch to her daughter left Mrs. Warren no property other than her equity in the Magnolia property and some cash amounting to five or six hundred dollars.

This suit was commenced June 11, 1936, to cancel both the note and mortgage to her sons and the quitclaim deed to her daughter, on the ground of fraud. It was tried by the court sitting without a jury. With respect to the Newhall property the court found that the quitclaim deed was given to Sarah L. Murray in consideration of her agreement to maintain and care for her mother during her lifetime, but that the conveyance was contrary to the provisions of section 3439 of the Civil Code and therefore amounted to constructive fraud against the plaintiff who was then a creditor of the grantor. The decree thereupon cancelled the quitclaim deed. No appeal was taken from the last-mentioned portion of the judgment and it has become final. The invalidity of that quitclaim deed is not an issue on this appeal.

With respect to the note and mortgage for $5,725 which were executed and delivered to Charles A. and John F. Warren January 18, 1936, the court determined that they were founded on adequate and valuable consideration consisting of an antecedent debt; that they were not executed or ac-

cepted contrary to law to defraud creditors; that the grantor was not then insolvent, and that the note and mortgage were valid, binding instruments in payment of a previous indebtedness. Judgment was rendered that plaintiff take nothing by his action against Charles A. or John F. Warren. From this last-mentioned portion of the judgment the plaintiff has appealed.

The evidence amply supports the findings and judgment of the validity of the note and mortgage of $5,725 which were given to Charles A. and John F. Warren January 18, 1936. There is no doubt the grantor owed them at least that sum of money, and that she had frequently promised to secure the indebtedness in that manner. There is also substantial evidence that she was not insolvent at the time she executed and delivered those instruments. The question as to whether the second mortgage was executed with the fraudulent purpose of defeating creditors is one of fact and not of law under the circumstances of this case. Since the evidence regarding that question is conflicting, we are bound by the findings of the trial court. Section 3442 of the Civil Code provides in that regard: ''The question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration.''

It is the established rule in California that a preexisting debt furnishes valuable consideration for the execution of a mortgage. (*Ekmann* v. *Plumas County Bank,* 215 Cal. 671 [12 Pac. (2d) 433]; *Bradley* v. *Butchart,* 217 Cal. 731, 744 [20 Pac. (2d) 693]; 17 Cal. Jur. 955, sec. 240.)

It is true that section 3442 of the Civil Code provides in part that:

'' . . . Any transfer or incumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors.''

In the present case, however, the court has found, and for the purposes of this appeal we must assume, the mortgagor, at the time of the execution of her note and mortgage to her sons, was neither insolvent nor did she contemplate insolvency. And as we have previously said, she gave the note and mortgage for a valuable consideration, since they were executed in payment of an antecedent debt which she had previously promised to secure in that manner.

■ Moreover, the plaintiff is not in a position to question the validity of the second note and mortgage, for we do not perceive that those instruments obstruct in any way the enforcement of his previous mortgage. Section 3441 of the Civil Code provided that:

"A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation."

The respondents' mortgage did not obstruct the enforcement of appellant's foreclosure proceeding. He obtained his judgment for the full amount prayed for and procured the sale of the property to satisfy his lien. He purchased that property at sheriff's sale for less than forty per cent of the value thereof according to the appraisement of a reliable realtor. He had a deficiency judgment entered in his favor for the unpaid balance of his original loan. The property was conveyed to him by the sheriff subject only to the equity of redemption. In the absence of fraud the grantor had an absolute right to convey her equity in that property subject to the prior mortgage lien. Even though it may be assumed the respondents were bound by the judgment of foreclosure, they may still be entitled to exercise an equity of redemption. At least, in the absence of fraud, which the court has specifically found did not exist, the respondents' note and mortgage are not invalid.

■ With respect to the question as to whether the respondents are bound by the judgment of foreclosure, which we think is not necessarily involved on this appeal, assuming that constructive notice of the action was not given as required by section 409 of the Code of Civil Procedure, by recording a *lis pendens,* and that they did not have actual notice of that foreclosure proceeding, they would not be bound by the judgment since they were not parties to the action. In 16 California Jurisprudence, 655, section 10, it is said in that regard:

"In the absence of notice, actual or constructive, one who takes title from the defendant pending the action is not bound by the judgment if not a party thereto." (See *Page* v. *W. W. Chase Co.,* 145 Cal. 578 [79 Pac. 278].)

It is true that notwithstanding the fact that the respondents were not parties to the action for foreclosure of the

mortgage they would be bound by the judgment if they had either actual or constructive knowledge of that proceeding. (*Hibernia Sav. & Loan Soc.* v. *Lewis*, 117 Cal. 577, 580 [47 Pac. 602, 49 Pac. 714] ; sec. 1908, subd. 2, Code Civ. Proc.)

There is substantial evidence that the respondents had actual notice of the pendency of the foreclosure proceeding. If there is a conflict of evidence upon that issue, in support of the judgment it should be resolved against the appellant. But the determination of that question is not controlling with respect to the validity of the second note and mortgage. The respondents' note and mortgage may be perfectly valid in spite of the fact that they would be bound by the foreclosure judgment in the other suit. The appellant purchased the Magnolia property at the sheriff's sale subject to redemption. Since the second mortgage was executed for a valuable consideration without fraud, it conveyed to the respondents at least an equity of redemption in the property. They were not parties to the foreclosure proceeding. Their lien upon that land has never been foreclosed. It is true that the effect of the foreclosure sale extinguished the claims of all defendants *who were parties to that action,* except their rights of redemption, and vested title to the property at the date of the mortgage, subject to the right of redemption conferred by law. (*McNutt* v. *Nuevo Land Co.,* 167 Cal. 459, 464 [140 Pac. 6] ; 18 Cal. Jur. 217, sec. 506.) ▮ Anyone who has a lien inferior to that of another upon the same property has a right to redeem the property from the superior lien. (Sec. 2904, Civ. Code; sec. 701, Code Civ. Proc.) We specifically refrain from determining the precise rights or remedies of the respondents under the circumstances of this case, for they are not necessarily involved on this appeal. We merely hold that the respondents have an equity in the property by virtue of their subsequent note and mortgage which renders the instruments valid.

The judgment is affirmed.

Pullen, P. J., and Tuttle, J., concurred.