Filed 11/19/20
*See dissenting opinion.*

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074674 |
| v. | (Super.Ct.No. SWF013298) |
| GERARD JOHN GALLO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

On March 10, 2006, an information charged defendant and appellant Gerard John Gallo with elder abuse under Penal Code[1] section 368, subdivision (b)(1) (count 1), and murder under section 187, subdivision (a) (count 2). A jury convicted defendant as charged. On December 10, 2010, the trial court sentenced defendant to a total indeterminate term of 15 years to life on count 2. The court also imposed a determinate term of three years on count 1, but stayed the sentence pursuant to section 654. After defendant appealed, in an unpublished opinion filed on June 18, 2012, in case No. E052538, we affirmed the judgment.

Almost seven years later, on March 11, 2019, defendant filed a petition for resentencing under section 1170.95 in pro. per. On April 26, 2019, the People filed a response. On August 5, 2019, defendant filed a reply.

On January 31, 2020, the People made an oral motion to dismiss defendant's petition. The People argued that defendant was the actual killer, and therefore, not entitled to relief. The People stated that defendant punched his father in the face and his father died. When the trial court asked if this was a "single-defendant murder case," the prosecutor responded, "Yes." Thereafter, the trial court denied defendant's petition for resentencing.

On February 6, 2020, defendant filed a timely notice of appeal.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issues to assist the court in its search of the record for error:

(1)     "Did the lower court err when it dismissed appellant's petition for resentencing pursuant to Penal Code section 1170.95?"

(2)     "Did the lower court prejudicially err by conducting the hearing on appellant's petition for resentencing outside appellant's presence and by failing to obtain a waiver of appellant's right to be present at the hearing."

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

We recognize that in *People v. Cole* (2020) 52 Cal.App.5th 1023, Division Two of the Second Appellate District held "that *Wende'*s constitutional underpinnings do not apply to appeals from the denial of postconviction relief. (*Id*. at p. 1028.) We have "no independent duty to review the record for reasonably arguable issues," and when a defendant fails to file a supplemental brief, "the Court of Appeal *may* dismiss the appeal as abandoned." (*Id.* at p. 1039, italics added.) Recently, in *People v. Flores* (2020) 54 Cal.App.5th 266 (*Flores*), our colleagues in Division Three of the Fourth Appellate

District held "that when an appointed counsel files a *Wende* brief in an appeal from a summary denial of a section 1170.95 petition, a Court of Appeal is not required to independently review the entire record, but the court can and should do so in the interests of justice.  This is a pure question of law, so our review is de novo."  (*Id.* at p. 269.)  The *Flores* court went on to reiterate that "while we agree with the primary holding in *Cole*— that we are not required to conduct an independent review of the record because this is not defendant's first appeal as a matter of right—we have found no legal authority that *prohibits* us from doing so in the interests of justice."  (*Id.* at p. 273.)  We agree with our colleagues in *Flores*.

"There are three well-established "due process" criteria that are helpful to courts when establishing procedures in the interests of justice:  'They are (1) "the private interests at stake," (2) "the government's interests," and (3) "the risk that the procedures used will lead to erroneous decisions." ' "  (*Flores*, *supra*, 54 Cal.App.5th at pp. 273-274.)

As noted by the court in *Flores*, "[i]n an appeal from a denial of a section 1170.95 petition, the private interests at stake are the liberty interests of the person who may be in custody and seeking release.  [Citation.]  The government's interests are the appellate court's interests in making sure there was a correct ruling in the trial court, while balancing fiscal and administrative concerns.  [Citation.]  And finally, the risk of an erroneous ruling is present if appointed counsel failed to identify a meritorious (reversible) issue on appeal, and the appellate court also failed to identify that issue by

4

failing to conduct an independent review." (*Flores*, *supra*, 54 Cal.App.5th at p. 274.) The court went on to state that "[w]hen we weigh the paramount liberty interests of the petitioner, the modest fiscal and administrative burdens to the courts, and the possible (while presumably low) risk of a petitioner's unlawful incarceration due to an unreviewed meritorious issue on appeal, we lean toward caution.  That is, although it is not required under law, we think an appellate court can and should independently review the record on appeal when an indigent defendant's appointed counsel has filed a *Wende* brief in a postjudgment appeal from a summary denial of a section 1170.95 petition (regardless of whether the petition has filed a supplemental brief.)" (*Ibid.*)

We agree with *Flores* that dismissal is discretionary, and that we can and should independently review the record on appeal in the interests of justice.  (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)

"In 2018 the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) . . ., which abolished the natural and probable consequences doctrine. . . .  Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he:  actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or 'was a major participant in the underlying felony and acted with reckless indifference to human life.' "  [Citations.]  The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of

5

the new law and resentencing those who were so convicted." (*People v. Murillo* (2020) 54 Cal.App.5th 150, 166 (*Murillo*).)

"Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing. The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility: (1) He was charged with murder in a manner 'that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine' [citation]; (2) He 'was convicted of' or pleaded guilty to 'first degree murder or second degree murder' [citation]; and (3) He 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437 [citation]. As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life." (*Murillo*, *supra*, 54 Cal.App.5th at p. 166.)

In this case, defendant was the sole killer and a jury found defendant guilty of second degree murder under section 187, subdivision (a). Therefore, section 1170.95 does not apply to defendant.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's

6

attorney has fully complied with the responsibilities of counsel and no arguable issue

exists.  (*Id.* at p. 126; *Wende*, *supra*, 25 Cal.3rd at pp. 441-442.)

## DISPOSITION

The appeal is affirmed.

CERTIFIED FOR PUBLICATION


MILLER

Acting P. J.



I concur:


CODRINGTON

J.

[*P. v. Gallo*, E074674]

MENETREZ, J., Dissenting.

Gerard John Gallo admitted that he engaged in a one-on-one physical altercation with the victim (his 90-year-old father) and killed him. There were no co-principals. Gallo's trial involved neither the felony murder rule nor the natural and probable consequences doctrine. His murder conviction accordingly has nothing to do with Penal Code section 1170.95 (unlabeled statutory citations are to this code) or Senate Bill No. 1437 (2017–2018 Reg. Sess.). (See § 1170.95, subd. (a)(1).) I learned all the relevant facts by reading Gallo's opening brief and the opinion from his second direct appeal (the first resulted in a retrial).

In 2019, Gallo filed a pro se petition for resentencing under section 1170.95. For the reasons just given, the petition was obviously frivolous and correctly denied. Gallo appealed. Unsurprisingly, appointed appellate counsel was unable to identify any arguable issues and filed a brief raising none. Gallo was given the opportunity to file a personal supplemental brief but declined. Because this is an appeal from an order entered in a postjudgment proceeding after the judgment became final, we are not required under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 to review the record ourselves to determine whether there are any arguable issues. (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45; *People v. Serrano* (2012) 211 Cal.App.4th 496, 498 (*Serrano*).) Accordingly, we should dismiss the appeal as abandoned. (*Serrano*, *supra*, at pp. 503-504; *People v. Cole* (2020) 52 Cal.App.5th 1023, 1039 (*Cole*).)

1

Instead, the majority exercises its discretion to conduct full-scale *Wende* review, reading every page of the record to search for arguable grounds for reversal.  Because I believe that decision constitutes an abuse of discretion, I dissent.

I agree with the majority opinion that, although we are not required to conduct such a review, we also are not prohibited from conducting it.  (See *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 7 (*Ben C.*); *People v. Flores* (2020) 54 Cal.App.5th 266, 273-274 (*Flores*).)  We have discretion to read the entire record and look for arguable grounds for reversal.  We have that discretion in every appeal, both criminal and civil—we are always allowed to read the whole record, searching for issues and requesting supplemental briefing on anything we find.  (Gov. Code, § 68081; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *Hibernia Sav. & Loan Soc. v. Farnham* (1908) 153 Cal. 578, 584-585.)

But we almost never do that.  Rather, we ordinarily "follow the principle of party presentation."  (*United States v. Sineneng-Smith* (2020) __ U.S. __ [140 S. Ct. 1575, 1579].)  We presume the correctness of the trial court's rulings, and we hold appellants to their burden of demonstrating prejudicial error.  (See *Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 8.; *Cole*, *supra*, 52 Cal.App.5th at pp. 1039-1040.)

As a result, appellate courts throughout the state ordinarily dismiss appeals in mentally disordered offender (MDO) proceedings when the appellant files a brief raising no issues.  (*People v. Taylor* (2008) 160 Cal.App.4th 304, 308.)  Similarly, appellate courts throughout the state dismiss appeals in juvenile dependency cases under *In re Sade*

2

*C.* (1996) 13 Cal.4th 952 and *In re Phoenix H.* (2009) 47 Cal.4th 835 when no issues are raised.

Here, however, the majority opinion concludes that we "should" exercise our discretion to review the entire record "in the interests of justice." (Maj. opn., *ante*, at p. 5.) I disagree.

No matter how small the record in this case may be, it in no way serves the interests of justice for us to read it to try to find arguable grounds for reversal, just as it would not serve the interests of justice for us to read the record searching for ways to square the circle or turn lead into gold or get blood from a stone. For the reasons already given, we know without reading the record that it is legally impossible that reversible error was committed in this case. Consequently, reading the record to try to find arguable grounds for reversal serves no legitimate purpose and is undeniably a waste of judicial resources. The majority opinion contains no colorable argument in support of its contrary conclusion.

This case also highlights the way in which *Wende* review is inherently unsuited to appeals from postjudgment orders such as denial of a petition under section 1170.95. When a criminal defendant's counsel on the first appeal as of right files a brief raising no issues, *Wende* requires us to conduct a "review of the *entire* record." (*Wende*, *supra*, 25 Cal.3d at p. 441, italics added.) We are required to perform "'a full examination of *all* the proceedings, to decide whether the case is *wholly* frivolous.'" (*Ibid.*, italics added.) Such a thorough review makes sense in that context, because reversible error can occur at any time from pretrial proceedings through sentencing. Consequently, in order to

3

vindicate the defendant's constitutional right to effective assistance of counsel by confirming that there are no arguable grounds for reversal, we must review every page of the record. An appeal from denial of a section 1170.95 petition (or any number of other requests for postjudgment relief, such as resentencing under section 1170.18) is completely different. As this case illustrates, sometimes one can determine without reading all or even most of the record that no reversible error occurred, because the petitioner is categorically ineligible for relief. In such circumstances, *Wende* review makes no sense. Why would we read every page of the record when we know in advance that we will not find anything that matters?

The majority opinion relies on *Flores*, *supra*, 54 Cal.App.5th 266, which also declined to apply the principles that the trial court's decision is presumed correct and that it is the appellant's burden to demonstrate prejudicial error. (*Id.* at p. 274; see *Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 8.; *Cole*, *supra*, 52 Cal.App.5th at pp. 1039-1040.) *Flores* reasoned that we should decide whether to conduct full-scale *Wende* review by balancing the private interests, the government interests, and the risk that whatever procedure we follow will lead to error. (*Flores*, at pp. 273-274.) *Flores* concluded that we "can and should" review the record to search for reversible error when a no-issue brief is filed in a section 1170.95 appeal, because of "the paramount liberty interests of petitioner, the modest fiscal and administrative burdens to the courts, and the possible (while presumably low) risk of a petitioner's unlawful incarceration due to an unreviewed meritorious issue on appeal." (*Flores*, at p. 274.) That is, because liberty interests are so

4

weighty, and the weights of the other two factors are negligible, on balance we should conduct full *Wende* review.

I believe *Flores*'s reasoning and conclusion are unsupported, both as a general matter and as applied in this case. First, *Flores* overestimates the weight of the private interest, as *Cole* explained. "The private interest [on appeal from a section 1170.95 proceeding] is less weighty than the interests at stake in *Wende* itself. A defendant's interest during the first appeal of right at issue in *Wende* is ensuring that his liberty is not taken away unless he is found guilty beyond a reasonable doubt at a trial where his constitutional and statutory rights are scrupulously honored; the failure to protect this interest results in wrongful incarceration. A defendant's interest when seeking postconviction relief, in most cases, seeks the 'benefit of ameliorative changes' in the law rendered applicable to the defendant by legislative grace rather than constitutional imperative [citations]; the failure to protect this interest results in the failure to reduce or eliminate a conviction or sentence that was previously imposed and adjudicated to be valid. [Citations.] Less is at stake in the postconviction context, which explains why the Sixth Amendment's right to a jury's finding of guilt does not apply to factfinding in support of postconviction relief. [Citations.] . . . A defendant's private interest in seeking postconviction relief is most comparable to a denial of release following a finding he is not guilty by reason of insanity; in both situations, the defendant's personal liberty is at stake but what he is seeking is a modification of a previously adjudicated order that deprived him of that liberty in the first place." (*Cole*, *supra*, 52 Cal.App.5th at pp. 1036-1037; see also *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1425 [declining

5

to conduct *Wende* review and dismissing appeal from denial of release following finding of not guilty by reason of insanity].)

Second, *Flores* underestimates the burdens of conducting *Wende* review in these cases, because *Flores* fails to acknowledge that the number of cases is enormous. My research indicates that *Wende* briefs have been filed in over 250 appeals from section 1170.95 proceedings in just the last one and one-half years. The time spent reading the records in such cases delays our work on the cases of other deserving litigants, including direct appeals by criminal defendants whose "paramount liberty interests" (*Flores*, *supra*, 54 Cal.App.5th at p. 274) are implicated much more strongly. (See *Cole*, *supra*, 52 Cal.App.5th at p. 1037 ["judicial resources are scarce," *Wende* review is "resource-intensive," and "the more mechanisms there are for postconviction relief, the more time they will take to adjudicate and the less time that will remain for appeals where greater private interests are at stake, such as first appeals of right"].) *Flores* does not attempt to grapple with those issues.

As applied here, the *Flores* holding is indefensible. Reviewing the record to search for reversible error does impose some burden, however slight. As a result, such a review is unjustified here because nothing can come of it.

Again, I agree with the majority opinion and *Flores* that it is within our discretion to conduct *Wende* review in this case, as in every case, both criminal and civil. But judicial discretion "'is not a whimsical, uncontrolled power.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Rather, an exercise of judicial discretion must have some "'reasonable basis.'" (*Ibid.*) Because the majority

opinion's exercise of discretion has none, I dissent. The appeal should be dismissed as abandoned.

MENETREZ

J.

7